UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARCHWAY REALTY CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09 CV 4028 |
| | ) | |
| KENTWOOD MICHIGAN REALTY, LLC, | ) | Judge John W. Darrah |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant, Kentwood Michigan Realty, LLC, a Michigan limited-liability company ("KMR"), moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. For the reasons stated below, the motion is denied.

## BACKGROUND

KMR is a limited-liability company with offices in New York City. Archway is an Illinois corporation with its sole office in Tinley Park, Illinois.

Kentwood Realty, Inc. ("KRI") entered into a sublease under which KRI was given control of a Michigan shopping center. On May 1, 1999, Archway executed the management agreement with KRI. Pursuant to the terms of the management agreement, Archway was exclusively employed to rent, manage, supervise and direct the operation of the shopping center. The agreement specified a five-year term with two automatic five-year renewals and specifically provided that KMR will indemnify and hold Archway harmless against various claims and liabilities. Section 8 requires that "[a]ll funds collected by [Archway] for [KMR] shall be held by [Archway] in trust ... separate from any other funds under control of [Archway]" and that Archway is "to deposit [KMR's]

funds in a bank or banks designated by [KMR] in such accounts designated by and in the name of [KMR]." KMR's account was maintained in Illinois, and Archway could not disburse the funds in that account without KMR's authorization. *Id.* That authorization came from New York to Archway via mail, email, fax or telephone. (Ex. B ¶ 21). (A copy of KMR's March 2009 bank statement is attached hereto as Exhibit D).

On December 20, 2000, KRI sent notice to Archway that "pursuant to a business restructuring," KRI assigned its interest in the shopping center to KMR. In the following years, KMR and Archway unsuccessfully attempted to renegotiate the management agreement. Archway continued to manage the property under the terms of the original agreement.

On April 14, 2009, KMR terminated the management agreement. KMR claimed that Archway had acted with gross negligence and willful misconduct.

Archway filed the instant complaint on July 6, 2009. Archway contends that the termination of the contract was improper and constitutes a breach of the management agreement. As a result, Archway asserts that it has been deprived of management fees and leasing commissions it stood to earn from the date the agreement was terminated through April 30, 2014, when the agreement was set to expire.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) asserts a "lack of jurisdiction over the person." With a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff has the burden of demonstrating the existence of personal jurisdiction. *Allied Van Lines, Inc. v. Edwards Movers, Inc.*, 2009 U.S. Dist. LEXIS 47908, at *4 (N.D. Ill June 3, 2009) (*Allied*). However, the plaintiff need only make a

*prima facie* case for personal jurisdiction. *Citadel Group Ltd. v. Washington Regional*, 536 F.3d 757, 760 (7th Cir. 2008) (*Citadel*). Moreover, the court draws all reasonable inferences in favor of the plaintiff and resolves all factual disputes in its favor. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987).

In this diversity action, personal jurisdiction is proper if an Illinois court would have jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997) (*RAR*). The Illinois long-arm statute extends personal jurisdiction to the limit allowed under the Due Process Clause of the 14th Amendment. *Id.* at 1276-77. Therefore, the analysis in this case is limited to whether the exercise of personal jurisdiction in this case is contrary to the United States Constitution. *Hyatt Int'l Corp. v. Coco*, 302 F. 3d 707, 715 (7th Cir. 2002).

Due process requires that a defendant have certain minimum contacts with the state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *RAR*, 107 F.3d at 1277. Minimum contacts are established through actions demonstrating purposeful availment of the privilege of conducting activities within the forum, including deliberately reaching out and creating continuing obligations with a forum resident. *USCIC of North Carolina RSA #1, Inc. v. Ramcell, Inc.*, 2007 WL 3307022, at *2 (N.D. Ill. Nov. 6, 2007). Defendant's contacts cannot be merely random, fortuitous, or attenuated. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985) (*Burger King*). Rather, the defendant's conduct and connection with the forum state should be such that it reasonably anticipates being hauled into court in the forum state as a result of its minimum contacts. *World-Wide Volkswagen Corp v. Woodson*, 444 U.S. 286, 297 (1980).

## ANALYSIS

Plaintiff asserts jurisdiction on two grounds. First, KMR is bound by the choice-of-law clause in the employment contract with Archway. Second, KMR has sufficient contacts in Illinois independent of the contract.

### Choice of Law

Plaintiff asserts that the choice-of-law provision within the terms of the contract supports personal jurisdiction in Illinois. Plaintiff points out that "[c]ourts have frequently found a choice-of-law clause among the most compelling evidence of intent." *General Binding Corp. v. McBride*, 2002 WL 825032, at *2 (N.D. Ill. Apr. 30, 2002). In the instant case, the agreement contained the language that the "laws of the State of Illinois shall govern the validity, performance and enforcement of this Agreement." (Ex. C § 15(b)). Plaintiff asserts that by choosing to apply the laws of Illinois, Defendant sought to invoke the protections and benefits of the law of Illinois. Moreover, Plaintiff also notes that an interdependent relationship with an Illinois entity coupled with the agreement that Illinois law would govern the parties' disputes is an indication of Defendant's deliberate affiliation with Illinois and the foreseeable possibility of litigation here. *Allied*, 2005 WL 418032, at *3.

Defendant counters by arguing that KMR is not the corporate successor to KRI. Defendant contends that KRI, not KMR, negotiated the contract with Archway. Therefore, the agreement is not attributable to KMR' who only purchased the property in 2001, whereas the agreement between Archway and KRI was executed in 1999. Accordingly, Plaintiff asserts that there is no basis to impute to KMR the contracts of KRI.

4

Plaintiff responds by arguing that KMR is merely the product of corporate restructuring at KRI. Plaintiff admits that the agreement was negotiated between KRI and Archway, yet points to KRI's own written admission in 2000 that they assigned and transferred all of their interest in the shopping center management contract to KMR pursuant to a "business restructuring." Moreover, Plaintiff notes "a predecessor corporation's contracts will be imputed to its successor if the successor is a 'mere continuation' of its predecessor, such that the predecessor and successor are practically the same entity." *Underwriters Laboratories v. Hyrdofilm L.P.*, 2006 WL 2494748, at *6 (N.D. Ill. Aug. 23, 2006). Furthermore, Plaintiff notes that the management and ownership, address, phone numbers, bank accounts and personnel all remained the same between KRI and KMR. In essence, Plaintiff argues that this was a business restructuring that amounts to little more than a name change and that, therefore, the contracts of KRI should be imputed to KMR.

The choice-of-law provision provides strong evidence that Defendant intended to purposefully avail itself of the privilege of conducting business within Illinois, therefore invoking the benefits and protections of its laws. *Burger King,* 471 U.S. at 473. Moreover, it is clear that KMR is the corporate successor to KRI. The-choice-of law provision strongly indicates that Defendant should have anticipated defending a lawsuit within Illinois.

*Minimum Contacts in Illinois*

Plaintiff largely performed its service from its Tinley Park, Illinois office. From the Tinley Park office, Archway: (a) collected and deposited rent; (b) drafted notices and settled disputes with tenants; (c) negotiated leases and renewals; (d) hired contractors and

arranged for upkeep of the property; (e) paid KMR's mortgage, utility bills and taxes; and (f) hired an Illinois accountant and an Illinois law firm to handle property matters. Defendant knew these services were performed in Illinois as it sent numerous payments, leases and correspondence to Plaintiff in Illinois.

Plaintiff claims that the Defendant has sufficient minimum contacts with Illinois. Plaintiff points out that the contract itself was negotiated and executed in Illinois. Moreover, Plaintiff contends their services were largely carried out from Archway's offices in Illinois. Plaintiff points to the list of services performed in Illinois, including: collecting rent, hiring contractors, bill payment and settling disputes. Plaintiff also notes that KMR communicated with Archway for ten years at its sole office in Illinois.

Defendant asserts that all of the functions of the agreement actually took place in Michigan. For example, the taxes, insurance, repairs and maintenance for the shopping center all took place within the State of Michigan. Defendant admits the Plaintiff may have conducted some internal management functions from its offices in Illinois but assert that the bulk of the on-site administration and performance of the contract took place in Michigan.

Plaintiff refers to *Citadel*, 536 F.3d 757, for support. In *Citadel*, Washington Regional, an Arkansas company, hired Citadel, an Illinois company, to do development work for a project in Arkansas. The project fell apart, and Citadel brought suit in Illinois for unpaid fees. The trial court found that the "focus here should be on the property that the contract is centered on and not the administrative services provided in Illinois." *Id.* at 763. The Seventh Circuit reversed, holding that the location of the project did not control considering that much of Citadel's services consisted of administrative duties carried out

in Illinois. *Id.* at 764. Plaintiff contends that the instant case is analogous to *Citadel*. Plaintiff argues the project's location in Michigan should not control the jurisdictional question. Rather, Archway's significant administrative work done largely in Illinois should be sufficient to establish the necessary minimum contacts in Illinois.

Defendant contends that Archway's reliance on *Citadel* is misplaced. Defendant argues that the instant case is distinguishable from *Citadel* for a number of reasons. Defendant asserts that solicitation of business is a highly relevant contact, as noted by the *Citadel* opinion, and there was no such solicitation in the instant case. *Id.* at 764. Defendant also contends that the services performed by Archway were specifically centered in Michigan, whereas, the services in *Citadel* were largely predevelopment activities centered in Illinois. Ultimately, Defendant concludes that there is no basis to conclude that KMR had contacts with the State of Illinois to justify the exercise of personal jurisdiction over it.

KMR maintained a ten-year business relationship with Archway. This business relationship required KMR to be in continuous contact with Archway's Illinois office on at least a weekly basis. KMR's contacts with Archway suggest that it should have reasonably anticipated defending a suit within the Illinois court system. Moreover, Archway performed a significant portion of its contractual obligations from within the confines of its Illinois offices. Such a business relationship is akin to the arrangement in the *Citadel* case. As in *Citadel*, the physical location of the property here is not the controlling factor in determining jurisdiction. Rather, the services performed are to be considered as well. The physical location of the shopping center is in Michigan; however, many of the services performed by Archway took place within Illinois.

Archway's services and duration of performance within Illinois predominate over the mere fact that the location of the shopping center is in Michigan. Accordingly, KMR has sufficient contacts within the State of Illinois.

## CONCLUSION

The choice-of-law provision in the original contract serves as strong evidence that Defendant intended to purposefully avail itself of the privileges of conducting business within Illinois. Moreover, Plaintiff has established that Defendant has sufficient contacts with Illinois, independent of the management contract. Accordingly, Plaintiff has established that personal jurisdiction over Defendant is proper in this case. Defendant's motion is denied.

Date: November 24, 2009

JOHN W. DARRAH
United States District Court Judge